# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

KATHRYN A. WEEKS,

        Plaintiff,

        vs.

UNUM GROUP, formerly known as
UNUMPROVIDENT CORPORATION,
and FIRST UNUM LIFE INSURANCE
COMPANY,

        Defendants.

**MEMORANDUM DECISION AND
ORDER**

**Case No. 2:07-CV-00577DAK**

**Judge Dale A. Kimball**

On May 27, 2008, this court issued a Memorandum Decision and Order denying in part Plaintiff Kathryn A. Weeks's Motion for Partial Summary Judgment and denying in part her Motion for Additional Discovery. In its decision, the court declined to rule on several arguments promulgated by Weeks in her two motions, and the court requested supplemental briefing from the parties regarding these arguments. The parties completed all supplemental briefing on July 30, 2008. The court has since carefully reviewed the briefing, the relevant law, and other materials submitted by the parties, including the court requested general services agreement (GSA) between Defendants Unum Group (UP), formerly known as Unumprovident Corporation, and First Unum Life Insurance Company (First Unum). Upon review of this information, the court concludes that oral argument will not significantly aid the decisional process, and the court issues the following Memorandum Decision and Order.

**BACKGROUND**

First Unum was the insurer for a group long-term disability insurance policy (the Policy) issued to Weeks's employer, Morgan Stanley, for the benefit of its employees and their beneficiaries.  The Policy, effective January 1, 2004, is a fully insured ERISA plan.  The Policy includes the provision that "[i]n making any benefits determination under th[e P]olicy, . . . [First Unum] shall have the discretionary authority both to determine an employee's eligibility for benefits and to construe the terms of th[e P]olicy."

The Policy provided insurance coverage for Weeks, who was diagnosed with Multiple Sclerosis in 1994.  In September 2005, Weeks took leave from work due to illness.  Weeks's date of disability is September 30, 2005.  Weeks was thereafter provided short-term disability benefits.  Weeks's long-term benefits were eventually terminated.

In August 2007, Weeks filed suit in federal court, seeking judicial review of her benefits termination.  Weeks subsequently filed a motion for partial summary judgment, asking the court to conclude that de novo is the proper standard of review for the court to apply in reviewing the benefits termination decision.  Weeks also filed a motion for additional discovery requesting, among other things, additional discovery on Defendants' alleged conflict of interest.

In its May 27, 2008 Memorandum Decision and Order, this court denied in part Weeks's Motion for Partial Summary Judgment and denied in part Weeks's Motion for Additional Discovery.  The court declined to rule on several issues raised by Weeks in her motions and asked the parties to submit supplemental briefing.  Primarily, the court asked the parties to brief (1) whether it was UP, or its subsidiary, First Unum, that actually made the decision to terminate Weeks's benefits and (2) if the deciding entity was UP, whether First Unum actually and

lawfully delegated its discretionary authority to UP.[1]

The court requested supplemental briefing on these issues after it determined that the administrative record was not clear on its face as to whether First Unum or UP made the claims decision.  In support of this determination, the court noted that although the record showed that various letters were signed by First Unum employees and sent on behalf of First Unum, there was also record evidence that suggested UP made the claims decision.  This evidence included the following:  (1) Weeks's claim file bore the title "[UP] Corporation, Claim Folder Contents, Claimant Name: Kathryn A. Weeks. . . .  This document is the property of [UP].  Unauthorized access is strictly prohibited";  (2) the letters and official claim file documents Weeks received from First Unum were all printed on UP letterhead;  (3) the phone number that First Unum lists as its benefits center contact number on the letters the company sent Weeks throughout the claim and appeal process was the same benefits contact number UP lists on its website; (4) the website

---

[1]  Because it was not apparent to the court as to which entity actually made the benefits termination decision, the court also declined in its Memorandum Decision and Order to rule on Weeks's request for additional discovery regarding Defendants' alleged conflict of interest due to their dual role as payor and claims administrator.  The court determines, however, that the Supreme Court's recent decision in *Metropolitan Life Insurance Co. v. Glenn*, 128 S. Ct. 2343 (2008), renders this issue moot.  In *Glenn*, the Supreme Court recognized that an inherent conflict of interest exists when a professional insurance company also acts as the plan administrator.  *See id*. at 2348.  But the Court stated that this conflict does not "impl[y] a change in the *standard* of review, say, from deferential to *de novo* review."  *Id*.  Rather, the conflict "should 'be weighed as a factor in determining whether there is an abuse of discretion.'"  *Id*. at 2350 (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)) (additional quotations and citation omitted).  Accordingly, because First Unum's dual role does not alter the court's standard of review, and therefore prevents the court from considering materials outside the administrative record, the court denies Weeks's Motion for Additional Discovery.  *See Fought v. Unum Life Ins. Co. of Am.*, 379 F.3d 997, 1003 (10th Cir. 2004) ("[I]n reviewing a plan administrator's decision under the arbitrary and capricious standard, the federal courts are limited to the administrative record—the materials complied by the administrator in the course of making his decision." (quotations and citation omitted)).

provided by First Unum on its letters to Weeks was the UP website; (5) faxes sent to Weeks's counsel were on UP letterhead, stated UP's name, and included UP's web address; and (6) the Policy included a privacy statement from UP.

To aid the court in discerning which entity made the claims decision, the court requested that Defendants submit, along with the requested supplemental briefing, a copy of the GSA.  The GSA reveals that First Unum and UP contracted for UP to provide certain services to First Unum, including "comprehensive claims management services."  Claims management services "includ[ed] without limitation, review[ing] claims and medical files [and] determin[ing] if claims are payable."  The GSA further states that First Unum "retain[ed] final approval on all claims payments" and "final decisions w[ould] be based upon guidelines and procedures established and approved by [First Unum] . . . and communicated in writing to [UP] by [First Unum]."  Under the GSA, Defendants agreed that "[UP would] perform its obligations . . . as an independent contractor and not as the employee, partner[,] or agent of [First Unum]."

As of July 30, 2008, the parties had completed all supplemental briefing.

**DISCUSSION**

The central questions before this court are whether it was UP, or its subsidiary, First Unum, that made the decision to terminate Weeks's benefits, and, if it was UP that actually made the benefit termination decision, whether UP acted with actual and lawful discretionary authority.  It is undisputed that the Policy grants First Unum discretionary authority.  Thus, if First Unum was the entity that made the benefit denial decision, the court reviews the denial decision under the arbitrary and capricious standard.  But if it was UP, First Unum's parent

company, that actually made the claims decision, and if UP made that decision without lawful discretionary authority, de novo is the proper standard of review under ERISA.

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), the Supreme Court held that "a denial of benefits challenged under § 1132(a)(1)(B) [of ERISA] is to be reviewed under a de novo standard of review unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id*. at 115. If such discretionary authority exists, the court reviews a benefits denial decision under the arbitrary and capricious standard. *See Maez v. Mountain States Tel. & Tel., Inc.*, 54 F.3d 1488, 1505 (10th Cir. 1995).

Courts have determined that it is "[t]he plan administrator [that] bears the burden of proving that the deferential standard of review applies." *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002); *see also Sharkey v. Ultramar Energy Ltd.*, 70 F.3d 226, 229 (2d Cir. 1995) ("[T]he party claiming deferential review should prove the predicate that justifies it.").

The court first considers which entity—First Unum or UP—made the benefits termination decision. As noted by this court in its earlier Memorandum Decision and Order, it is unclear from the administrative record as to which entity made the termination decision. For instance, as set forth by Weeks, the administrative record reveals that (1) Weeks's claim file bears the title "[UP] Corporation, Claim Folder Contents, Claimant Name: Kathryn A. Weeks. . .  This document is the property of [UP]. . . .  Unauthorized access is strictly prohibited";  (2) the letters and official claim file documents Weeks received from First Unum were all printed on UP letterhead;  (3) the phone number that First Unum lists as its benefits center contact number on the letters the company sent Weeks throughout the claim and appeal

5

process is the same benefits contact number UP lists on its website; (4) the website provided by

First Unum on its letters to Weeks is the UP website; (5) faxes sent to Weeks's counsel are on

UP letterhead, state UP's name, and include UP's web address; and (6) the Policy includes a

privacy statement from UP.  But, on the other hand, as stated by Defendants, the administrative

record also indicates that various letters sent to Weeks were signed by First Unum employees

and were sent on behalf of First Unum.[2]

Given this ambiguity in the administrative record as to which entity actually made the

benefits termination decision, the court requested a copy of the GSA between Defendants.  *See*

*Anderson v. Unum Life Ins. of Am.*, 414 F. Supp. 2d 1079, 1098 (M.D. Ala. 2006) (reviewing

general services agreement between UP and its subsidiary Unum Life to determine if Unum Life

was the entity that made benefit denial decision); *see also Daniel v. UnumProvident Corp.*, No.

06-3774-CV, 2008 WL 205062, at *3 (2d Cir. Jan. 24, 2008) (remanding to the district court to

determine whether the general services agreement between Unum Life and its parent company

UP presented a triable issue of which entity administered the plaintiff's claim); *Boyles v. Unum*

*Life Insurance Co. of America*, No. CV-05-6015, 2006 WL 3405011, at *5  (C.D. Cal. Nov. 20,

2006) (asking defendants to provide court with copy of general services agreement between

Unum Life and its parent company UP because it was not clear which of the two companies

actually made the decision to deny the plaintiff benefits).  The GSA indicates that First Unum

---

[2] Defendants also point out that First Unum issued the Policy and agreed to pay benefits
under the Policy.  Weeks argues, however, that First Unum's issuance of the Policy and its
payment of benefits provides no indication that First Unum made the claim determination.  The
court agrees.  *See Anderson v. Unum Life Ins. of Am.*, 414 F. Supp. 2d 1079, 1099 (M.D. Ala.
2006) (determining that subsidiary's issuance of policy "d[id] not speak to the issue of whether
or not [the subsidiary] actually retained its authority to make claims determinations").

and UP contracted for UP to provide certain services to First Unum, including "comprehensive claims management services."  Claims management services "includ[ed] without limitation, review[ing] claims and medical files [and] determin[ing] if claims are payable."  The GSA also states that First Unum "retain[ed] final approval on all claims payments" and "final decisions w[ould] be based upon guidelines and procedures established and approved by [First Unum] . . . and communicated in writing to [UP] by [First Unum]."  Under the GSA, Defendants agreed that "[UP would] perform its obligations . . . as an independent contractor and not as the employee, partner[,] or agent of [First Unum]."

In the court's mind, neither the GSA nor the supplemental briefing provided by the parties shed significant light on the issue of which entity made the Weeks's benefit denial decision.  But the court emphasizes that it is Defendants' burden to show entitlement to deferential review and thus their failure to show that First Unum was the decision-making entity prevents the court from resolving doubts in Defendants' favor.  Additionally, the court recognizes that factual similarities exist between the present case and the federal district court of Alabama's decision in *Anderson v. Unum Life Insurance Co.*, 414 F. Supp. 2d 1079 (M.D. Ala. 2006).  In *Anderson*, the court concluded that it was UP, and not Unum—also a subsidiary  to UP—that made the decision to deny the plaintiff's benefits claim.  *See id.* at 1099.  In reaching this decision, the *Anderson* court noted that under the general services agreement between UP and Unum, the contracting parties agreed, like here, that UP would review claims and decide whether claims were payable; that the letterhead sent to the plaintiff was preprinted with UP's name and address; that UP and Unum shared contact information; and that there were no contractual terms in the general services agreement indicating that Unum retained "the ultimate

authority to approve or deny claims and, thus, exercised its discretionary authority under the plan." *Id*. at 1098-99.

Defendants argue that because under the GSA, First Unum "retain[ed] final approval on all claims payments," First Unum reserved its discretionary authority. Although it appears that language indicating the subsidiary's retention of authority to approve or deny benefit claims strongly suggests the reservation of discretionary authority, *see id*., the court is not convinced that retention of final approval on all claims payments is equivalent. Namely, retention of final approval of claims payments indicates only that First Unum reserves ultimate authority in cases where UP determines that claims should be paid. But it does not similarly indicate, at least on its face, ultimate authority over claim denials.

Proceeding on the basis that UP, and not First Unum, actually made the decision to terminate Weeks's benefits, the court next considers whether First Unum delegated its discretionary authority to UP, thus requiring this court to apply a deferential standard of review to the termination decision. As Weeks points out, Defendants fail to point to any express delegation of discretionary authority by First Unum. This failure, however, appears to be ultimately inconsequential under Tenth Circuit law.

In *Geddes v. United Staffing Alliance Employee Medical Plan*, 469 F.3d 919 (10th Cir. 2006), the Tenth Circuit Court of Appeals held that an ERISA fiduciary may delegate portions of its discretionary authority to non-fiduciary third parties. *See id*. at 927. And although the court noted that "[t]his is especially true when such delegation is explicitly authorized by the plan document," the court did not indicate that explicit authorization must exist in the plan document. *Id*. at 926.

Defendants claim that the decision in *Geddes* concludes this court's analysis in that, despite no express delegation in the plan document, First Unum lawfully delegated its discretionary authority to UP and such delegation renders any benefit denial decision by UP subject to the arbitrary and capricious standard of review.

The court, however, is not convinced that *Geddes* unequivocally determines whether UP acted with lawful discretionary authority in rendering Weeks's benefit termination decision.  Of concern is the *Geddes* court's reliance on trust principles of agency in reaching its result and the express rejection by First Unum and UP, under the terms of the GSA, of any agency relationship. In its analysis, the *Geddes* court states that because "*Firestone* does not limit the parties to whom a fiduciary may delegate its authority, beyond those limits implicit in the principles of trust law . . . we turn to trust law itself for further guidance."  *Id*. at 925.  In so doing, the *Geddes* court acknowledges that

> trust law does not require a fiduciary to delegate his authority only to other fiduciaries.  Rather, the trustee is at liberty to delegate administrative tasks to "agents" or "other persons" as is necessary to carry out the purposes of the trust.  A fiduciary's decision to delegate does not violate his responsibility to the trust beneficiary insofar as the fiduciary himself remains personally liable for any decisions taken on his behalf.  In sum, the fiduciary is responsible for actions performed in his name.  The same is true in the ERISA context.

*Id*. at 926 (citations omitted).  In other words, the *Geddes* court concluded that

> [d]ecisions made by an independent, non-fiduciary third party at the behest of the fiduciary plan administrator are entitled to *Firestone* deference because the third parties act only as agents of the fiduciary.  For purposes of liability, decisions made by third parties are decisions made by the fiduciary.  If a plan administrator has been allotted discretionary authority in the plan document, the decisions of both it and its agents are entitled to judicial deference.

*Id*. at 927.

Importantly, as earlier noted, here First Unum and UP agreed in the GSA that "[UP would] perform its obligations . . . as an independent contractor and *not* as the employee, partner[,] or agent of [First Unum]."  (Emphasis added.)  In their briefing, the parties offer no guidance as to whether Defendants' express rejection of an agency relationship conflicts with the underlying principles guiding the *Geddes* decision.   At first blush, it seems to the court that an entity cannot both claim an agency relationship under *Geddes* while at the same time rejecting it under the terms of a general services agreement.

Although the court is reluctant to ask for further briefing, the court's primary concern is with reaching the proper result under the law and with giving the parties an opportunity to be heard.  Thus, for the sake of judicial economy, and to prevent further delay in the review process, the court asks that the parties submit arguments as to if, and how, Defendants' rejection of an agency relationship impacts the *Geddes* analysis, in conjunction with their substantive briefing on whether Weeks's benefits were improperly terminated.  Such conjunctive briefing will further aid the court in that, upon review of the briefing, the court may determine that it would reach an identical result under either de novo or arbitrary and capricious review, thus rendering the question of the appropriate level of review essentially moot.

## CONCLUSION

The court determines that Defendants have failed to show that First Unum was the entity that actually made the decision to terminate Weeks's benefits.  The court, however, is still in need of additional briefing regarding whether First Unum lawfully delegated its discretionary

authority to UP.  Specifically, the court is concerned with if, and how, Defendants' direct repudiation of an agency relationship affects this court's reliance on the *Geddes* decision. Therefore, at this time, the court does not determine the appropriate standard of review to apply to the decision to terminate Weeks's benefits.

To avoid delay, the court orders the parties to address the agency issue in conjunction with their substantive briefing on whether Weeks's benefits were improperly terminated.

DATED this 15th day of September, 2008.[3]


BY THE COURT:


DALE A. KIMBALL

United States District Judge

---

[3] As noted in footnote one, the court also denies the remaining claims involving Weeks's Motion for Additional Discovery.

11