**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| **KATHRYN A. WEEKS,**<br><br>   **Plaintiff,**<br><br>   **vs.**<br><br>**UNUM GROUP, formerly known as UNUMPROVIDENT CORPORATION, and FIRST UNUM LIFE INSURANCE COMPANY,**<br><br>   **Defendants.** | **SECOND AMENDED MEMORANDUM DECISION AND ORDER**<br><br>**Case No. 2:07-CV-00577DAK**<br><br>**Judge Dale A. Kimball** |

There are three matters before the court.  First, Plaintiff Kathryn A. Weeks moves for partial summary judgment.  Second, Weeks moves for additional discovery.  Lastly, Defendants Unum Group, formerly known as UnumProvident Corporation (UP), and First Unum Life Insurance Company (First Unum) move for a protective order to bar Weeks from any discovery outside the administrative record.  The court held a hearing on the motions on May 6, 2008.  At the hearing, Marcie E. Schaap represented Weeks and Scott M. Petersen represented Defendants. Following the hearing, the court took all three matters under advisement.  Now, having carefully considered the memoranda and additional materials submitted by the parties, as well as the relevant law and facts relating to the motions, the court renders the following Second Amended Memorandum Decision and Order.[1]

---

[1]  The court amends its earlier order, dated May 27, 2008, to correct its inaccurate reference on page 12 to First Unum as a non fiduciary.

**BACKGROUND**

At all times relevant to this lawsuit, First Unum was the insurer for a group long-term disability insurance policy (the Policy) issued to Weeks's employer, Morgan Stanley, for the benefit of its employees and their beneficiaries.  The Policy, effective January 1, 2004, is a fully insured ERISA plan.  The Policy includes the provision that "[i]n making any benefits determination under th[e P]olicy, . . . [First Unum] shall have the discretionary authority both to determine an employee's eligibility for benefits and to construe the terms of th[e P]olicy."

The Policy provided insurance coverage for Weeks, who was diagnosed with Multiple Sclerosis in 1994.  In September 2005, Weeks's took leave from work due to illness and symptoms. Weeks's date of disability is September 30, 2005.  Weeks was thereafter provided short-term disability benefits.  Weeks's long-term benefits were eventually terminated.

The long-term benefits termination letter sent to Weeks describes various doctor visits Weeks had prior to the benefits determination in which the doctors indicated, among other things, that she had "normal motor function," intact cranial nerves, "no diplopia," normal test results for upper extremities muscle testing, stable "optic nerve function," and that "complaints of fatigue and decrease in function appear to be subjective in nature."  The denial letter goes on to explain that the insurer had concluded "after a thorough review of [Weeks's] medical records," that Weeks's "MS [was] stable," "that disability [was] not supported by medical documentation" on file, and that Weeks was able to "perform [her] sedentary occupation."  The letter invites Weeks to submit any additional information to support her request for disability benefits.

The letters and official claim file documents Weeks received from First Unum were all printed on UP letterhead.  UP is the parent company of First Unum.  The phone number that First Unum lists as its benefits center contact number on the letters the company sent Weeks throughout the claim and appeal process is the same benefits contact number UP lists on its website.  Similarly, the website provided by First Unum on its letters to Weeks is the UP website.  And faxes sent to Weeks's counsel are on UP letterhead, state UP's name, and include UP's web address.  The Policy also includes a privacy statement from UP.  Weeks's claim file bears the title "[UP] Corporation, Claim Folder Contents, Claimant Name:  Kathryn A. Weeks. . . .  This document is the property of [UP].  Unauthorized access is strictly prohibited."

In August 2007, Weeks filed suit in federal court, seeking judicial review of her benefits denial.

## DISCUSSION

The court considers three motions.  First, Weeks moves for partial summary judgment, asserting that de novo review is the appropriate standard by which to review the decision to terminate Weeks's long-term disability payments.  Second, Weeks moves for additional discovery, claiming that she is entitled to discovery of evidence outside the administrative record and that Defendants failed to provide her with a full and fair review as required under ERISA. Finally, Defendants move for a protective order barring Weeks from conducting discovery outside the administrative record.[2]

---

[2] In response to Weeks's Motion for Additional Discovery, Defendants concurrently filed a memorandum in opposition and a motion for a protective order to bar any further attempts by Weeks to obtain evidence outside the administrative record.  The arguments Defendants raise

## I.  <u>Motion for Partial Summary Judgment</u>

In her motion for partial summary judgment, Weeks asks this court to conclude that de novo review is the appropriate standard to apply in examining the decision to terminate Weeks's long-term benefits.  Weeks claims that de novo review is the correct standard because the Policy's reservation of discretion clause violates Utah Administrative Code (UAC) rule 590-218. *See* Utah Admin. Code R590-218.  Weeks also asserts that de novo review is proper because it was UP, not First Unum, that actually made the decision to terminate her benefits, and UP did not act with discretionary authority.

Under Federal Rule of Civil Procedure 56(c), "[s]ummary judgment is appropriate only 'if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law.'"  *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) (quoting Fed. R. Civ. P. 56(c)).  In  reviewing a motion for summary judgment, the court "construe[s] the record in the light most favorable to the nonmoving party." *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1259 (10th Cir. 2008).

### A.    **UAC Rule 590-218**

Weeks first argues that de novo review is appropriate because UAC rule 590-218 prohibits the Policy's reservation of discretion clause.  In response, Defendants assert that

---

in their opposition memorandum and their Motion for Protective Order are identical and briefed collectively.  Because Defendants' Motion for Protective Order raises the exact same arguments as its opposition to the motion for additional discovery and requests no relief that a denial of the motion for additional discovery would not effectively provide, the court denies the Defendants' motion as moot and unnecessary.

because ERISA preempts rule 590-218, the regulation does not affect or invalidate the Policy's discretionary clause, and the court must therefore review the termination of benefits under the arbitrary and capricious standard.

Rule 590-218 prohibits reservation of discretion clauses in ERISA employee benefit plans unless the discretionary clause

> has language that is the same as, or substantially similar to . . . [the following:]
>
> "Benefits under this plan will be paid only if (the plan administrator) decides in its discretion that (the claimant) is entitled to them.  (The plan administrator) also has discretion to determine eligibility for benefits and to interpret the terms and conditions of the benefit plan.  Determinations made by (the plan administrator) pursuant to this reservation of discretion to not prohibit or prevent a claimant from seeking judicial review in federal court of (the plan administrator's) determinations.
>
> The reservation of discretion made under this provision only establishes the scope of review that a federal court will apply when (a claimant) seeks judicial review of (the plan administrator's) determination of eligibility for benefits, the payment of benefits, or interpretation of the terms and conditions applicable to the benefit plan.
>
> (The plan administrator) is an insurance company that provides insurance to this benefit plan and the federal court will determine the level of discretion that it will accord (the plan administrator's) determinations."

Utah Admin. Code R590-218.  Rule 590-218 also requires that any reservation of discretion clause "be highlighted in the form by use of a bold font that is not less than 12 point type."  *Id*.

The Policy's discretionary clause states "11.  Discretionary Authority.  In making any benefits determination under this policy, the Company [First Unum] shall have the discretionary authority to determine an employee's eligibility for benefits and construe the terms of this

5

policy." Weeks claims that the clause's language fails to satisfy rule 590-218 requirements and thus is invalid. Defendants do not dispute that the discretionary clause fails to satisfy the rule's requirements, but instead argue that this failure is irrelevant because ERISA preempts the regulation. Thus, the question of preemption is the only issue the court need address regarding rule 590-218.

ERISA expressly states that it "shall supercede any and all [s]tate laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The express preemption clause, however, is not absolute. *See id*. § 1144(b)(2)(A). ERISA also contains a savings clause, stating that "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any [s]tate which regulates insurance, banking, or securities." *Id*. It is undisputed that rule 590-218 does not regulate banking or securities. Accordingly, under ERISA, rule 590-218 is saved from preemption only if it constitutes a law that regulates insurance. *See id*.

In *Kentucky Association of Health Plans, Inc. v. Miller*, 538 U.S. 329 (2003), the Supreme Court clarified the appropriate test for determining whether a state statute regulates insurance. Specifically, the Court held "that for a state law to be deemed a 'law . . . which regulates insurance' under § 1144(b)(2)(A), it must satisfy two requirements. First, the state law must be specifically directed toward entities engaged in insurance. . . . Second, . . . the state law must substantially affect the risk pooling arrangement between the insurer and the insured." *Id*. at 341-42 (first alteration in original).

Because here the parties do not dispute that rule 590-218 is specifically directed at the insurance industry, the question for the court is whether the rule substantially affects the risk

pooling arrangement between the insurer and the insured.  *See id*.  In *Miller*, the Court declined to specifically expound upon the meaning and boundaries of this requirement.  Nonetheless, the *Miller* Court determined that Kentucky's "Any Willing Provider" statute, prohibiting health benefit plans from discriminating against providers who were willing to meet participation requirements, "substantially affect[ed] the type of risk pooling arrangements that insurers may offer."  *Id*. at 339.  The Court explained that

> [b]y expanding the number of providers from whom an insured may receive health services, [any willing provider] laws alter the scope of permissible bargains between insurers and insureds in a manner similar to the mandated-benefit laws we upheld in *Metropolitan Life* [*Ins. Co. v. Massachusetts*, 471 U.S. 724 (1985)], the notice-prejudice rule we sustained in *UNUM* [*Life Ins. Co. of Am. v. Ward*, 526 U.S. 358 (1999)], and the independent-review provisions we approved in *Rush Prudential* [*HMO, Inc. v. Moran*, 536 U.S. 355 (2002)].

*Id*. at 338-39.  The Court further noted that a state law need not actually spread the risk to substantially affect the risk pooling arrangement between the insurer and the insured; a state law that "dictates to the insurance company the conditions under which it must pay for the risk that it has assumed . . . certainly qualifies as a substantial effect on the risk pooling arrangement between the insurer and the insured."  *Id*. at 339 n.3.

Weeks maintains that rule 590-218 substantially affects the risk pooling arrangement because the prohibition of discretionary clauses impacts the bargaining agreement between insurers and insureds in that insurers will increase prices to account for the loss of discretionary authority to deny benefits and interpret insurance policies.  Weeks cites two recent district court cases, in which courts determined that state laws prohibiting discretionary clauses substantially affected the risk pooling arrangement between the insurer and the insured.  *See Am. Council of*

*Life Ins. v. Watters*, 536 F. Supp. 2d 811, 823 (W.D. Mich. 2008); *Standard Ins. Co. v. Morrison*, 537 F. Supp. 2d 1142 , 1151-52 (D. Mont. 2008).  Weeks also argues that under Supreme Court precedent, a state law that mandates insurance policy language unquestionably has a substantial effect on the risk pooling arrangement.  *See Ward*, 526 U.S. at 374-75 (concluding that California's notice-prejudice rule regulates the business of insurance and explaining that the rule "changes the bargain between the insurer and insured; it effectively creates a mandatory contract term that requires the insurer to prove prejudice before enforcing a timeliness-of-claim provision" (quotations and citation omitted)).

In contrast, Defendants argue that, although the *Miller* Court is not entirely clear in its definition, this court should conclude that a state law only has a substantial effect on a risk pooling arrangement if the law impacts the relationship between the insurer and the insured regarding the substance of the contract (i.e., benefits).  Defendants contend that rule 590-218 has no effect on the bargain between the insurer and the insured and its only impact is on the court's legal analysis after a claim is denied.  In other words, Defendants claim that rule 590-218 has no significance to the parties prior to court review.

This court, however, is not convinced that a ban on all discretionary clauses only affects judicial review.  Prohibiting insurers from including discretionary clauses, and thus operatively prohibiting the exercise of discretionary authority, arguably "alter[s] the scope of permissible bargains between insurers and insureds."  *Kentucky Association of Health Plans, Inc. v. Miller*, 538 U.S. 329, 338-39 (2003).  And a state law stripping insurers of their discretion to make benefit determinations and policy interpretations effectively "dictates to the insurance company the conditions under which it must pay for the risk that it has assumed."  *Id*. at 339 n.3.

8

Furthermore, like the *Watters* and *Morrison* courts, this court sees no reason to disregard the Supreme Court's decision in *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355 (2002), in which the Court determined that an Illinois state law compelling independent de novo review of health maintenance benefit denials regulated insurance and was therefore saved from ERISA preemption. *See id.* at 373-74. Although the Court decided *Rush* before *Miller* and set forth a new test in *Miller* for examining whether a state law regulates insurance, the *Miller* Court gives no indication it intended to overrule *Rush* and instead favorably cites and analogizes to *Rush* in its analysis. *See Miller*, 538 U.S. at 339. In *Rush*, the Court explained that:

> While the [Illinois] statute designed [to require de novo review] undeniably eliminates whatever may have remained of a plan sponsor's option to minimize scrutiny of benefit denials, this effect of eliminating an insurer's autonomy to guarantee terms congenial to its own interest is the stuff of garden variety insurance regulation. . . . It is therefore hard to imagine a reservation of state power to regulate insurance that would not be meant to cover restrictions of the insured's advantage in this kind of way.

536 U.S. at 387. The *Rush* Court also stressed that "[not] only is there no ERISA provision directly providing a lenient standard for judicial review of benefit denials, but there is no requirement necessarily entailing such an effect even directly." *Id.* at 385.

Nonetheless, this court need not determine today whether a state law banning all reservation of discretion clauses substantially affects the risk pooling arrangement between insurers and insureds. Nor does the court need to decide the precedential value of *Rush*.

Although not noted by the parties, unlike the state laws considered in *Watters* and *Morrison*, rule 590-218 does not constitute an all-out-ban on reservation of discretion clauses. Instead, the rule requires that a discretionary clause, if included, be explicit, highly visible, and

inclusive of language that explains the discretion, its extent, and its implications.  This distinction is significant.

Since the Supreme Court's decision in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), in which the Court recognized that insurers could design ERISA plans to grant discretion to a plan fiduciary, benefit plans have included language providing for discretionary authority.  *See Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 383 n.2 (3d Cir. 2000) (noting that secondary authority "correctly predicted that [after *Firestone*] companies would quickly redraft their plans to confer unambiguous grants of discretion so as to garner deferential review"); *Zajac v. Chicago Area I.B. of T. Pension Fund*, No. 01 C 9330, 2004 WL 2403139, at *6 (N.D. Ill.  Oct. 26, 2004) ("Since *Firestone,* new employee benefit plans have been created (or old ones amended) to include 'appropriate boilerplate language giving plan administrators discretion to interpret the plan.'" (quoting Paul J. Schneider & Barbara W. Freedman, *ERISA: A Comprehensive Guide* § 8:03[H] (2d ed. 2003))); 2 Merrick T. Rossein, Employment Law Deskbook for Human Resources Professionals § 31:36 (advising plan administrators to include *Firestone* language reserving discretion to interpret plans and decide claims).  Thus, because most plans already account for the reservation of discretionary authority, and such authority's effect on judicial review, when they create and enter into insurance agreements, rule 590-218's requirement that this reservation of authority be explicit, explained, and conspicuous, has no substantial effect on the risk pooling arrangement between insurers and insureds.  That is, rule 590-218 has no impact on the scope of permissible bargains because the rule leaves the underlying discretion itself unchanged.  The permissibility, bounds, and judicial significance of the discretion bargained for in insurance agreements is unaltered by rule 590-218 requirements.

All that rule 590-218 changes is how expressly and conspicuously that discretion is stated.

The court disagrees with Weeks's claim that rule 590-218 has a substantial effect on the risk pooling agreement solely because it mandates insurance policy language. Unlike the notice-prejudice statute in *Ward*, the language mandated by rule 590-218 does not, as discussed above, "change the bargain between the insurer and insured." 526 U.S. at 375.

In short, the court concludes that rule 590-218, having no substantial effect on the risk pooling arrangement between insurers and insureds, does not regulate insurance. Accordingly, the court holds that ERISA preempts the state regulation, and the Policy's failure to conform with the regulation does not implicate de novo review.

## B.    Claims Administrator

Weeks also argues that de novo review is appropriate because it was UP, First Unum's parent company, not First Unum, that actually made the decision to terminate Weeks's benefits and that UP made this decision without discretionary authority. In contrast, Defendants contend that First Unum was the claims administrator that made the decision to deny Weeks benefits and because First Unum acted with undisputed discretionary authority, the arbitrary and capricious standard applies.

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), the Supreme Court held that "a denial of benefits under 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plans." *Id*. at 115. "To qualify their decisions for deferential review, *Firestone* requires only that ERISA health plan administrators

11

and fiduciaries reserve discretionary authority to themselves in the plan document." *Id*. at 925.
If the administrator or fiduciary has such discretionary authority, "courts must review benefit
determinations under an arbitrary and capricious standard." *Geddes v. United Staffing Alliance
Employee Med. Plan*, 469 F.3d 919, 923 (10th Cir. 2006) (quotations omitted).

The Tenth Circuit has extended properly reserved discretionary authority to non-fiduciary
parties. In *Geddes v. United Staffing Alliance Employee Medical Plan*, the court, applying
principles of trust law, determined that "[o]nce a health plan administrator . . . has been
delegated discretionary authority under the terms of the ERISA plan, nothing prevents that
administrator from then delegating portions of its discretionary authority to non-fiduciary third
parties." *Id*. at 926. "This is especially true when such delegation is explicitly authorized by the
plan document." *Id*.

Here, the record evidence indicates that Morgan Stanley, the plan administrator, had
discretionary authority that it explicitly delegated to First Unum. But what is not evident is
whether it was First Unum—and not UP—that actually made the decision to terminate Weeks's
benefits. Additionally, if UP was the entity that actually made the claims determination, it is not
clear whether First Unum delegated its discretionary authority to UP and, if so, whether such
delegation is legally permissible. If, as Weeks argues, UP did make the benefit determination
without discretionary authority, the appropriate standard of review for the court to apply in
considering Weeks's claim denial is de novo. *See Firestone*, 489 U.S. at 115.

Weeks claims that the facts demonstrate that UP made the denial decision because (1) her
claim file bears the title "[UP] Corporation, Claim Folder Contents, Claimant Name: Kathryn A.
Weeks. . . . This document is the property of [UP]. Unauthorized access is strictly prohibited";

and (2) the letters and official claim file documents Weeks received from First Unum were all printed on UP letterhead.  Additionally, the phone number that First Unum lists as its benefits center contact number on the letters the company sent Weeks throughout the claim and appeal process is the same benefits contact number UP lists on its website.  Similarly, the website provided by First Unum on its letters to Weeks is the UP website.  And faxes sent to Weeks's counsel are on UP letterhead, state UP's name, and include UP's web address.  The Policy also includes a privacy statement from UP.

In contrast, Defendants claim that First Unum's use of UP letterhead does not suggest that UP made the claims decision.  Defendants note that First Unum was the entity that issued the Policy, that agreed to pay benefits under the Policy, that received and analyzed Weeks's claim, and that prepared all correspondence sent to Weeks.

In *Anderson v. Unum Life Insurance Co. of America*, 414 F. Supp. 2d 1079 (M.D. Ala. 2006), a plaintiff sued Unum Life Insurance Company of America (Unum Life), under ERISA, for denial of long-term disability benefits.  *See id*. at 1082-83.  Like First Unum, Unum Life is a subsidiary of UP.  *See id*. at 1086.  In *Anderson* an issue arose as to whether Unum Life was the entity that actually made the decision to deny the plaintiff's benefits claim.  *See id*. at 1098.  The evidence demonstrated that UP and Unum Life entered into a general services agreement that indicated that Unum Life had assigned claims administration duties to UP and that UP would perform its obligations as an independent contractor; that the letter the plaintiff received notifying her that her claim had been entered contained UP's phone number; that the employees who made the determination to deny the plaintiff's claim identified themselves as working for UP and there was no evidence these employees worked under the supervision or direction of

13

Unum Life; that the letterhead on the correspondence from these employees to the plaintiff was preprinted with UP's name and address; and that the mailing address provided to the plaintiff in the letter denying her claim directed the plaintiff to mail her appeal request to UP.  *See id*.  In concluding that UP was the entity that made the denial decision, the court dismissed as unpersuasive evidence that Unum Life had issued the policy to the plaintiff.  *See id*. 1099-1100.  Likewise, the court dismissed evidence that the policy language stated that Unum Life possessed discretionary authority.  *See id*. at 1099.  The court remarked that the policy terms "do not speak to the issue of whether or not Unum [Life] actually retained its authority to make claims determinations."  *Id*.  The *Anderson* court decided that in light of this evidence, UP was the entity that actually made the claims decision.  *See id*. at 1100.  Furthermore, the court concluded that Unum Life did not have the authority to delegate its decision making power and thus UP lacked discretionary authority, therefore triggering de novo review.  *See id*.

In *Boyles v. Unum Life Insurance Co. of America*, No. CV-05-6015, 2006 WL 3405011 (C.D. Cal. Nov. 20, 2006), the plaintiff argued that "it was not Unum [Life], but U[P], Unum [Life's] parent company, that made the decision to deny her claims" and that UP lacked discretionary authority because the policy did not authorize Unum Life to delegate its decision making power.  *Id*. at *5.  The plaintiff averred that the court should apply de novo review in examining her claim denial because UP lacked discretionary authority.  *See id*.  Citing *Anderson*, the *Boyles* court requested that Unum Life provide a copy of the general services agreement between Unum Life and UP.  Unum Life declined to provide a copy of the agreement and instead stipulated to de novo review.  *See id*.

And, in *Daniel v. UnumProvident Corp.*, No. 06-3774-CV, 2008 WL 205062 (2d Cir.

14

Jan. 24, 2008), the Second Circuit Court of Appeals remanded to the district court to determine whether the general services agreement between Unum Life and its parent company UP presented a triable issue of which entity administered the plaintiff's claim. *See id*. at *3. The *Daniel* court further directed the district court that if a triable issue exists and the lower court finds at trial that UP administered the claim, it must determine whether Unum Life delegated its discretionary authority to UP and whether Unum Life had such authority to delegate. *See id*. Like the plaintiffs in *Anderson* and *Boyles*, the plaintiff in *Daniel* argued that if UP did not have discretionary authority to make benefit determinations than de novo review is proper. *See id*. at *1.

In recognition of the above cases and given this court's uncertainty based on the evidence before it as to which entity actually made the Weeks's claim decision, the court requests additional information from the parties. Specifically, the court asks Defendants to provide a copy of the general services agreement between UP and First Unum, assuming such an agreement exists. The court recognizes that based on the information contained, or not contained, in the general services agreement, the parties may desire to submit supplemental briefing regarding the relationship between First Unum and UP and the claims decision. Additional briefing on this issue is permissible. Acting on the assumption that UP did make the claims decision, the court asks the parties to also brief whether First Unum delegated its discretionary authority to UP and, if so, whether such delegation is permissible under the law.

Notably, regarding the general services agreement, the court agrees with the Second Circuit Court of Appeals that review of this agreement is appropriate even though it is extraneous evidence outside the administrative record. "The doctrine limiting review of ERISA

15

claims to evidence before the plan administrator was developed to prevent federal courts from becoming 'substitute plan administrators' and thus to serve ERISA's purpose of providing 'a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously.'" *Id*. at *2 (quoting *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966, 967 (6th Cir. 1990)).  But "this concern is not implicated in cases where the extraneous evidence being offered goes to a question that was not, or could not have been, under consideration by the plan administrator."  *Id*.  Here, the court is interested in reviewing the agreement to determine the entity that decided Weeks's claim, "not to establish a historical fact pertaining to the merits of [Weeks's] claim."  *Id*.

## II.  <u>Motion for Additional Discovery</u>

Weeks moves for additional discovery on grounds that she did not receive a full and fair review of her claim as required under ERISA because Defendants did not substantively respond to her requests for information submitted during the benefit determination period.  Weeks also asks for further information regarding Defendants' alleged conflict of interest due to their dual role as payor and claims administrator.  Finally, Weeks requests review of the administrative services agreement between Morgan Stanley and First Unum.

## A.  <u>Full and Fair Review</u>

Weeks contends that she did not receive a full and fair review of her claim because Defendants refused to respond to various requests for information contained in letters that Weeks

sent the company.  Weeks claims that because she generated and submitted these letters during

the benefit determination period, they are relevant under ERISA regulations, and Defendants are

therefore required to substantively respond to the requests for information contained in these

letters.  Defendants challenge Weeks's assertion that responses to her letters are relevant, and

they maintain that they have provided Weeks with all relevant information, as so defined under

ERISA regulations.

29 C.F.R. § 2560.503-1(h)(2) explains the requisite claims procedures for a full and fair

review, including:

> (ii) Provid[ing] claimants the opportunity to submit written
> comments, documents, records, and other information relating to
> the claim for benefits; (iii) Provid[ing] that a claimant shall be
> provided, upon request and free of charge, reasonable access to,
> and copies of, all documents, records, and other information
> relevant to the claimant's claim for benefits. Whether a document,
> record, or other information is relevant to a claim for benefits shall
> be determined by reference to paragraph (m)(8) of this section; (iv)
> Provid[ing] for a review that takes into account all comments,
> documents, records, and other information submitted by the
> claimant relating to the claim, without regard to whether such
> information was submitted or considered in the initial benefit
> determination.

29 C.F.R. § 2560.503-1(h)(2)(ii)-(iv).  Paragraph (m)(8) provides that

> [a] document, record, or other information shall be considered
> "relevant" to a claimant's claim if such document, record, or other
> information[:]  (i) Was relied upon in making the benefit
> determination; (ii) Was submitted, considered, or generated in the
> course of making the benefit determination, without regard to
> whether such document, record, or other information was relied
> upon in making the benefit determination;
> (iii) Demonstrates compliance with the administrative processes
> and safeguards required pursuant to paragraph (b)(5) of this
> section in making the benefit determination.

17

*Id*. § 2560.503-1(m)(8)(i)-(iii).

Defendants contend that pursuant to 2560.503-1(m)(8), they have provided all information relevant to Weeks's claim for benefits.  Weeks disputes this contention on grounds that because she generated and submitted four letters requesting information during the course of her benefit determination, Defendants must respond to these requests for information.  That is, Weeks interprets subsection 2560.503-1(m)(8)(ii) to mean that if the letters were "submitted . . . or generated in the course of making the benefit determination," than anything asked for in the submitted letters necessitates a response.  *Id*. § 2560.503-1(m)(8)(ii).

The court disagrees with Weeks's interpretation and reads the statute to only require the provision of the letters.  According to the regulation's plain language, the regulation does not require the administrator to respond to requests for information simply because the demands for such requests are made in letters generated or submitted by claimant during the benefit determination period.  *See id*.  Despite Weeks's contentions, information that she considers relevant is not necessarily relevant information under the law.

Notably, Weeks also suggests that Defendants failed to provide specific reasons for their denial of Weeks's claim and that this insufficiency made it difficult for her to discern the basis for the denial decision.  Under federal ERISA regulations a benefit determination must, along with other requirements, give "[t]he specific reason for the adverse determination."  *Id*. § 2560.503-1(g)(1)(i).  The reason for this requirement is "to provide claimants with enough information to prepare adequately for further administrative review or an appeal to the federal courts."  *Skretvedt v. E.I. DuPont de Nemours & Co.*, 268 F.3d 167, 178 n.8 (3d Cir. 2001).  Conclusory explanations are insufficient to satisfy the specific reason requirement.  *See Flinders*

18

*v. Workforce Stabilization Plan of Philips Petroleum Co.*, 491 F.3d 1180, 1192 (10th Cir. 2007)

(citing *Richardson v. Cent. States, SE & SW Areas Pension Fund*, 645 F.2d 660, 665 (8th Cir.

1981)).  Nonetheless, providing a specific reason "is not the same thing as 'the reasoning behind

the reasons.'"  *Id.* (quoting *Gallo v. Amoco Corp.*, 102 F.3d 918, 922 (7th Cir. 1996)).  "To

determine whether a plan administrator considered and asserted a particular rationale, [the court]

look[s] only to those rationales that were specifically articulated in the administrative record as

the basis for denying a claim."  *Id.* at 1190.

Here, the denial letter sent to Weeks describes various doctor visits Weeks had prior to

the denial determination in which the doctors indicated, among other things, that she had

"normal motor function," intact cranial nerves, "no diplopia," normal test results for upper

extremities muscle testing, stable "optic nerve function," and that "complaints of fatigue and

decrease in function appear to be subjective in nature."  The denial letter goes on to explain that

the insurer had concluded "after a thorough review of [Weeks's] medical records," that Weeks's

"MS [was] stable," "that disability [was] not supported by medical documentation" on file, and

that Weeks was able to "perform [her] sedentary occupation."  The letter invites Weeks to

submit any additional information to support her request for disability benefits.

The court concludes that the information detailed in the Weeks's denial letter provides

specific reasons for the denial determination.  The court does not, of course, determine at this

time whether the rationale set forth in support of the denial is reasonable.  Instead, the court

merely holds that the reasons provided in the letter gave Weeks specific information that allowed

her to adequately prepare her case for further review.  The court therefore denies Weeks's

request for discovery of the information solicited in her letters to Defendants.

**B.      Conflict of Interest**

Weeks claims that an inherent conflict of interest exists in this case because Defendants

are both the claims administrator and the payor and that she is entitled to additional discovery

regarding Defendants' medical providers and the extent of their conflict of interest.  Defendants

admit a serious conflict of interest exists but contest that this interest necessitates further

discovery.[3]

As discussed in section I of this decision, the parties dispute whether First Unum or UP

acted as the claims administrator.  The parties also dispute whether, assuming UP made the

actual claims decision, First Unum delegated its discretionary authority to UP and, if so, whether

such delegation was permissible.  Because the court has asked for additional briefing on these

issues, and because the determination of which entity was the claims administrator and whether

that entity acted with permissible discretionary authority affects the standard of review this court

applies in reviewing Weeks's claim denial and could therefore also impact the admission of

extraneous evidence, the court withholds ruling on Weeks's request for additional discovery

regarding Defendants' medical providers at this time.  The court will issue its ruling on this issue

after it determines whether it was UP or First Unum that served as claims administrator.

**C.      Administrative Services Agreement**

Weeks requests review of the administrative services agreement between Morgan Stanley

and First Unum to ensure that Morgan Stanley actually gave First Unum discretionary power.

---

[3] Notably, the Supreme Court recently heard oral arguments in *MetLife v. Glenn*, No. 06-923, as to whether an ERISA plan administrator that both evaluates and pays claims operates under a conflict of interest that must be weighed on judicial review.  And, if so, how a court should consider that conflict in reviewing a claim denial.

The court denies this request.  Both parties agree, and the administrative record shows, that Morgan Stanley expressly delegated its discretion to First Unum in the 2005 disability benefits summary plan description.

**CONCLUSION**

In sum, the court first rejects Weeks's contention that de novo review of her claims decision is required under UAC rule 590-218.  Second, the court declines at this time to rule on whether de novo review is required on grounds that UP was the entity that actually made the claims decision.  As directed in the text of this decision, the court requests that the parties submit additional information and briefing concerning this issue.  The court provides a briefing schedule below.  Finally, the court disagrees with Weeks's assertion that Defendants refused her a full and fair review under ERISA, and the court denies Weeks's request for discovery regarding this issue, as well as Weeks's entreaty for a copy of the administrative services agreement between Morgan Stanley and First Unum.  The court refrains from ruling on Weeks's request for additional discovery regarding Defendants' medical providers and the extent of their conflict of interest until the court has determined, based on the requested information and briefing, which entity made the claims decision and whether this entity acted with permissible discretionary authority.

The deadline for procurement of the general services agreement between First Unum and UP is **<u>June 19, 2008</u>**.  Defendants shall submit a copy of the general services agreement to both the court and Weeks.  Following procurement of the agreement, the parties may desire to submit additional briefing regarding the agreement, the relationship between First Unum and UP, and the claims decision.  Such briefing is permissible but shall be included with court requested

briefing on whether, assuming UP made the claims decision, First Unum delegated its discretionary authority to UP and, if so, whether such delegation is legally permissible. Both parties shall file this briefing simultaneously by **July 14, 2008**. If either party desires to submit a reply to the other party's initial briefing, reply briefing must be completed by **July 30, 2008.** Following the completion of all briefing, the court will take the matter under advisement and issue a ruling. At this time, the court perceives no need for oral argument.

      Weeks's Motion for Partial Summary Judgment is DENIED in part. Weeks's Motion for Additional Discovery is DENIED in part. Defendants' Motion for Protective Order is DENIED as moot. The court declines to rule on the remaining issues until the requested briefing is complete.

      DATED this 17th day of September, 2008.


      BY THE COURT:


      _____

      DALE A. KIMBALL
      United States District Judge